**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SONIA K. HELMICK,**

                **Plaintiff,**

     **v.**                                  **Civil Action 2:20-cv-518**
                                                **Judge James L. Graham**
                                              **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Sonia K. Helmick ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

application for Period of Disability, Disability Insurance, and Supplemental Security Income

benefits.  This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 11), the

Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and

the administrative record (ECF No. 6).  For the reasons that follow, it is **RECOMMENDED** that

Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be

**AFFIRMED**.

**I.**        **PROCEDURAL HISTORY**

Plaintiff filed her application for Title II and Title XVI benefits on December 8, 2014,

alleging that she had been disabled since October 1, 2014.  (R. 562.)  On June 8, 2017, following

administrative denials of Plaintiff's application initially and on reconsideration, Administrative

Law Judge Matthew Winfrey (the "ALJ") held a hearing.  (*Id.* at 314–46.)  Plaintiff, represented

by counsel, appeared and testified.  (*Id.* at 320–37.)  Vocational expert Eric Pruitt also appeared

and testified at the hearing.  (*Id.* at 337–43.)  On November 1, 2017, the ALJ issued a decision

denying benefits.  (*Id.* at 412–31.)  However, on April 20, 2018, the Appeals Council vacated

that decision and remanded the case with instructions that the ALJ consider the opinion of

Plaintiff's therapist and explain the weight given to that opinion.  (R. 438–42.)  Accordingly, the

same ALJ held a second hearing on November 8, 2018.  (*Id.* at 282–313.)  Plaintiff, represented

by counsel, appeared and testified.  (*Id.* at 283, 286–97.)  Vocational expert Brian Womer, M.S.,

and Medical Expert Michael Lace, Psy.D., also appeared and testified at the hearing.  (*Id.* at 297–

311.)  On December 12, 2018, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act.  (*Id.* at 16–42.)  On November 25, 2019, the

Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision.  (R. 1–7.)  Plaintiff then timely commenced the instant action.

(ECF No. 1.)

　　In her Statement of Errors (ECF No. 11), Plaintiff represents that her sole contention of

error is that the ALJ's decision is not supported by substantial evidence.  However, from review

of the Statement of Errors as a whole, it appears Plaintiff's real contention of error is that the

ALJ erred in weighing the mental health opinion evidence.

## II.　　THE ALJ'S DECISION

　　On December 12, 2018, the ALJ issued a second decision finding again that Plaintiff was

not disabled within the meaning of the Social Security Act.  (R. 16–42.)  At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

gainful activity since her alleged onset date of October 1, 2014.  (*Id.* at 19.)  At step two, the ALJ

found that Plaintiff had the severe impairments of morbid obesity, female stress incontinence,

depression, anxiety, bipolar disorder, obsessive-compulsive disorder, and unspecified personality

disorder.  (*Id.*)  He further found at step three that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 19–24.)  At step four of the

sequential process, the ALJ set forth Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) and 416.967(b) except occasional contact with supervisors,
> coworkers, and the public; duties are performed without close teamwork, tandem
> work, or over the shoulder supervision; duties would not include conflict resolution
> or evaluating or persuading anyone; can perform routine tasks with no more than
> occasional changes; no travel or commercial driving; duties would not be at a
> production rate pace, such as assembly line work.

(*Id.* at 24.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the
    criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
    C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his
    or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual
    functional capacity, can the claimant perform other work available in the national
    economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

In reaching his conclusion at step four, the ALJ considered the opinions of agency psychologists Drs. Schwartzman and Edwards and gave their opinions little weight.  (R. 35.)  He also considered the opinions of treating physicians Dr. Klein and Dr. Patel, consulting examiner Dr. Rhodes, and treating counselor Ms. Guthrie and gave their opinions little weight.  (*Id.* at 36–38.)  Finally, the ALJ considered the opinion of Medical Expert Dr. Lace and gave his opinion great weight.  (*Id.*)

At step five of the sequential process, the ALJ, relying on Vocational Expert Womer's testimony, found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  (*Id.* at 40–41.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.* at 41.)

## III.    RELEVANT EVIDENCE OF RECORD

Although the ALJ found Plaintiff has certain physical impairments, the following summary is limited to the mental health evidence relevant to Plaintiff's statement of errors.

### A.    Mental Health Symptoms

#### 1.    Plaintiff's Testimony

At the October 2017 hearing, Plaintiff testified she last worked in 2015, but that she had quit because she thought she was going to be fired for failing to show up to work.  (R. 321–22.)  When asked why she no longer works, she replied "I get scared of people when I go out.  And I get headaches.  And my anxiety goes through the roof.  And I get—I just can't bear it.  I try." (*Id.* at 326.)  Plaintiff further testified that the only thing that helps her headaches is to "stay home . . . and nobody bothers me."  (*Id.* at 327.)  Plaintiff stated that her memory was "not very good," and that she would forget things like doctors' appointments.  (*Id.* at 328.)  Plaintiff said that her sleep was "[n]ot very good. I can be up all night and all day," but that in a typical night

4

she would sleep 6–8 hours and would take daily naps of 3–4 hours. (*Id.* at 329–30.) Plaintiff stated that she did not do household chores or go to the grocery store. (*Id.* at 329, 331–32.) Plaintiff said she was unable to visit her daughter in rehab. (*Id.* at 332.) Plaintiff testified that she had previously taken care of her grandchild for two years but had had difficulty doing so because of her depression and anxiety. (*Id.* at 333.) She added that she smoked marijuana because "it relaxes me." (*Id.* 334.)

At the November 2018 hearing, Plaintiff testified that she was unable to work because "mentally, I can't take it. I don't like being around people. I will get very mad if you say the wrong things." (R. 289–90.) She said that her sleep had worsened to 3–4 hours per night. (*Id.* at 290.) Plaintiff testified that she would go two or three days without showering and needed to be reminded to shower. (*Id.* at 293.) Plaintiff explained that she was now able to care for her granddaughter and dog with the help of her friends. (R. 291–92, 295–96.)

### 2. Treatment Notes and Evaluations

Plaintiff saw psychiatrist Chandravadan Patel, M.D., for mental health treatment beginning in 2013. (R. 28, 684.) In October 2014, she reported an increase of panic attacks and anxiety. (R. 29, 689.) In November 2014, she reported that she was unemployed, raising a young grandchild, and experiencing worsening mental health symptoms. (R. 29, 812.)

In March 2015, Plaintiff saw psychologist Amynda Rhodes, Psy.D., for a consultative examination. (R. 34, 753.) During the examination, Plaintiff claimed to be overwhelmed by questions. (R. 35, 756.) However, Plaintiff was able to complete many of the tasks Dr. Rhodes requested, included recalling objects after a five-minute delay, describing similarities, and a serial 3 task. (R. 35, 757.) Dr. Rhodes described her as "depressed" but also "alert, responsive, and oriented" during the evaluation. (R. 35, 756–57.)

5

In April 2015, Plaintiff had an appointment with Sue Layton, LISW-S, stating she wanted a change from Dr. Patel. (R. 29, 762.) However, she returned to see Dr. Patel in June 2015 and reported improved mental health symptoms. (R. 29, 816.) During a July 2015 appointment with Ms. Layton, Plaintiff said she was "extremely depressed." (R. 29, 821.)

In October 2015, Plaintiff reported improved symptoms to Dr. Patel. (R. 30, 849.) She told him she was planning to apply for disability. (R. 30, 1049.) According to Plaintiff, Dr. Patel was "rude" to her and she wanted to switch doctors. (*Id*.)

During a hospital visit in March 2016 for flu-like symptoms and leukocytosis, Plaintiff reported being "severely depressed." (R. 865.) She stated that sometimes she "does not feel like doing anything." (R. 30, 865.) Plaintiff also said she could not "be around people." (R. 30, 1058.)

In September 2016, Plaintiff was admitted to the hospital. (R. 30, 950.) She claimed to have tried to overdose on medication as a suicide attempt. (*Id.*) Plaintiff told the hospital staff she was stressed over finances and had left her previous psychiatrist because he wanted her to work. (*Id*.) A few days after she was discharged, she reported to another provider that she tried to overdose because she was upset about an altercation at one of her rental properties. (*Id.* at 30, 1078.)

The next month, Plaintiff told her therapist she was feeling more irritable and worried about bills. (R. 31, 1090.) Plaintiff was again upset with another provider who told her she could work. (*Id.*) At the end of 2016, Plaintiff had moved into public housing, but was still struggling with finances. (*Id.* at 30, 1095.) She also claimed she experienced auditory hallucinations. (R. 30, 1097.)

In March 2017, Plaintiff spoke with another mental health provider about visual hallucinations.  (R. 31, 1174.)  The next month, she was feeling more depressed and was worried about the upcoming disability hearing.  (R. 31, 1184.)  Throughout the summer of 2017, she reported anxiety over the disability hearing and improved depression symptoms.  (R. 31, 1219, 1240.)  During the fall of 2017, Plaintiff reported stress over family issues and increased depression.  (R. 31–32, 1250, 1260.)

In December 2017, Plaintiff's anxiety had increased because of custody issues with her granddaughter.  (R. 32, 1290.)   In February 2018, she reported to her provider that she felt more depressed and anxious.  (R. 32, 1300.)  She also said being around others triggered increased agitation.  (*Id*.)  The same month, she saw Dr. Klein's assistant to request a letter stating she could not work.  (R. 32, 1329.)

During counseling appointments in the spring of 2018, Plaintiff reported improved depression symptoms.  (R. 32, 1308–09, 1319.)  She still reported seeing people outside her window and "shadows."  (*Id*.)  At the end of May 2018, she felt more anxious, which she attributed to her fiancé being recently deployed.  (R. 32, 1344.)  In August 2018, Plaintiff reported feeling overwhelmed and paranoid.  (R. 32, 1362.)

## B.     Activities of Daily Living

In December 2014, Plaintiff completed a function report stating "on a good day I might clean. Get granddaughter from school.  Bad days put granddaughter on bus. Keep curtains closed don't answer phone, sleep due to deep depression. Very mean and mood swings."  (R. 610.) She reported that she had problems with personal care, including not bathing, staying in pajamas all day, and having trouble getting to the toilet.  (*Id.*)  She reported that she did not handle stress well and had a "fear of crowds, deep depression."  (*Id.* at 611.)  Plaintiff said she could not get

work because employers would not hire her, but also admitted that she "quit my job for no reason, felt like I just needed to go to the hospital."  (*Id.* at 612.)

During a consultative examination with Dr. Amynda Rhodes in March 2015, Plaintiff reported she did not have a routine.  (R. 756.)  Plaintiff said she relied on her daughter to do most of the household chores.  (*Id.*)  She stated that she could manage her own money, and could cook, clean, and do chores "if I have to."  (*Id.*)

At the October 2017 hearing, Plaintiff testified that her activities of daily living were limited: she did not perform household chores, go grocery shopping, or watch television.  (R. 329–32.) She said that on a typical day, she would "sit at home and be comfy and stay away from people."  (*Id.* at 332.)

At the November 2018 hearing, Plaintiff testified that she still did not go to the grocery store, but that she was now taking care of her granddaughter with the help of a friend.  (R. 290– 92, 295.)  Plaintiff still reported that her typical day involved staying at home in pajamas, but now she also said she watched TV, helped prepare food for her granddaughter, and made sure her granddaughter had playtime, bath-time, and bedtime according to a set schedule.  (*Id.* at 295.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff's sole contention of error is that the ALJ failed to properly weigh the mental health evidence of record in arriving at Plaintiff's RFC. (Pl.'s Statement of Errors at 8–15, ECF No. 11.) The undersigned will address the evidence supporting the ALJ's RFC, as well as each of the mental health opinions that Plaintiff contends were not afforded sufficient weight by the ALJ, in turn.

**A.     The ALJ's RFC was supported by substantial evidence.**

Plaintiff contends that the ALJ was incorrect to place great weight in Dr. Lace's opinion. (Pl.'s Statement of Errors at 15, ECF No. 11.) According to Plaintiff, Dr. Lace's testimony

contradicted the rest of the record.  Plaintiff further argues that the ALJ's reliance on Dr. Lace's

opinion, instead of on "the record as a whole," deprived the decision of substantial evidence.  (*Id.*

at 8.)  The undersigned finds these arguments to be without merit.

The ALJ must consider all medical opinions that he or she receives in evaluating a

claimant's case.  20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every

medical opinion we receive.").  The applicable regulations define medical opinions as

"statements from acceptable medical sources that reflect judgments about the nature and severity

of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do

despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1); see

also SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must always

consider and address medical source opinions.").

The ALJ is charged with the final responsibility for determining a claimant's residual

functional capacity.  *See* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the

residual functional capacity "is reserved to the Commissioner").  Moreover, the Social Security

Act and agency regulations require an ALJ to determine a claimant's residual functional capacity

based on the evidence as a whole.  42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating

§ 423(d) for Title XVI); 20 C.F.R. § 404.1546(c) ("If [the] case is at the administrative law judge

hearing level…the administrative law judge…is responsible for assessing your residual

functional capacity.").  As the court recognized in *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-

cv-2080, 2010 WL 750222 (N.D. Ohio Mar. 2, 2010), the ALJ is charged with evaluating several

factors in determining the residual functional capacity, including the medical evidence (not

limited to medical opinion testimony) and the claimant's testimony.  *Id.* at *2 (citing *Webb v.*

*Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); SSR 96-5P, 1996 WL 374183 (July 2, 1996); SSR 96-8P, 1996 WL 374184 (July 2, 1996)).

An ALJ's residual functional capacity assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence regarding what work a claimant is capable of performing.  SSR 96-5P, 1996 WL 374183 (July 2, 1996).  Social Security Ruling 96-8p instructs that the ALJ's residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work.  SSR 96-8P, 1996 WL 374184 (July 2, 1996).

The applicable regulations also explain that "[a]lthough we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(2).  The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1527(c)(2), (3), (4).  Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).

Here, the ALJ's weighing of the health opinions in arriving at Plaintiff's RFC is supported by substantial evidence.  In crafting the RFC, the ALJ assigned "great weight" to the opinion of Michael Lace, Psy. D, the medical expert who testified at the 2018 hearing.  (R. 36,

297–305.)  The ALJ further noted that Dr. Lace "reviewed the claimant's medical records and listened to the claimant['s] testimony . . . . He found her overall presentations were within normal limits . . . . He found the claimant would be limited to routine tasks with few if any changes in the nature of the tasks."  (R. 36.)  The ALJ explained that he found Dr. Lace's opinions to be "based on a review of the longitudinal medical record" and that he "provided detailed citations to the record throughout his testimony to support his findings."  (*Id.*)  Of note, the ALJ directly adopted the following limitations from Dr. Lace's testimony:  occasional contact with coworkers, public, and supervisors; routine tasks with few changes; no travel; and no fast-paced production-line type work.  (*Id.* at 24, 301–02.)  Thus, Dr. Lace's opinion constitutes substantial evidence for these limitations in the ALJ's RFC.  *See Swett v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 656, 661 (S.D. Ohio 2012) ("A medical expert's opinion, based on a review of the complete case record, can constitute substantial evidence.") (citing *Blakley,* 581 F.3d at 408–09).

The ALJ did not rely solely on Dr. Lace's opinion, however.  Indeed, the ALJ's mental RFC was *more* restrictive than Dr. Lace opined: that Plaintiff's duties not include any conflict resolution or evaluating or persuading others; and no commercial driving.  (*See* R. 24.)  Rather, in formulating Plaintiff's RFC, the ALJ also considered Plaintiff's testimony, her treatment records, and her activities of daily living.  (*See id.* at 25–35.)

In spite of this substantial evidence supporting the ALJ's mental RFC, Plaintiff argues that the ALJ should have included additional limitations opined by various sources.  (Pl.'s Statement of Errors at 8–15, ECF No. 11.)  The undersigned will consider each of the mental health opinions that Plaintiff contends were not afforded sufficient weight by the ALJ.

12

**B.      Lorry Guthrie, LPCC-S, Plaintiff's Treating Therapist from 2016–2017**

Plaintiff argues that the ALJ should have given greater weight to the opinion of her treating therapist, Ms. Lorry Guthrie, LPCC-S.  (Pl.'s Statement of Errors at 10–11, ECF No. 11.)  Ms. Guthrie completed a medical source statement on May 26, 2017.  (R. 1203–04.)  Ms. Guthrie found that Plaintiff was seriously limited in several functional areas including remembering work-like procedures, maintaining attention for a two-hour segment, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  (R. 1203.)  Ms. Guthrie opined that Plaintiff had "severe depressive [sic] and anxiety, poor concentration, poor memory, difficulty leaving her home, negative world view, excessive worries/fears, shaky, tearful, decreased motivation, decreased interest, difficulty sleeping, history of suicidal ideation, easily distracted, racing thoughts, difficulty maintaining routine."  (*Id*. at 1204.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).

Therapists, like Ms. Guthrie, however, are not "acceptable medical sources" and instead fall into the category of "other sources."  20 C.F.R. §§ 404.1513(d), 416.913(d); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (explaining that "these therapists do not qualify as 'acceptable medical sources' under the regulations.").  Although the ALJ must consider opinions from "other sources" and "generally should explain the weight

given," "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); *see also Cole v. Astrue*, 661 F.3d 931, 938 n.4 (6th Cir. 2011) (noting "the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care"); 20 C.F.R. § 416.927(f)(2) (providing that the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . . "). The ALJ considers "other source" opinions using the same factors for weighing a medical opinion from an acceptable medical source, but "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 416.927(f)(1). The relevant factors include the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 416.927(c)(1)–(6).

Here, the ALJ provided the following discussion of Ms. Guthrie's opinion:

[Ms. Guthrie] completed a form about the claimant's functioning . . . She indicated that the claimant was limited but satisfactory at understanding, remembering, and carrying out short and simple instructions, making simple work related decisions, asking simple questions or seeking assistance, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. In all other areas on the form, she found the claimant "seriously limited" . . . This opinion is extreme[ly] limiting and is not consistent with the record as a whole. The claimant's presentation on examination does not support this extreme degree of limitation. The claimant's functioning also does not support such limitations, such as being able to take care of her young grandchild. Thus, this opinion is given little weight.

(R. 37–38.)

The undersigned finds no error with the ALJ's consideration and weighing of Ms. Guthrie's opinion.  The ALJ articulated the weight he afforded the opinion and explained it was not entitled to greater weight because Ms. Guthrie's opinion was inconsistent with the record as a whole.  Further, Ms. Guthrie's opinion is not entitled to any special deference because she is not an "acceptable medical source."  Substantial evidence supports the ALJ's determination.  As summarized, *supra*, Plaintiff's mental health assessments consistently documented depression and anxiety, but did not reflect the type of extreme functioning problems described by Ms. Guthrie.  (R. 24–35.)  Moreover, Plaintiff often presented within normal limits.  (*See Id.* at 36, 1078–87, 1109–1118, 1174–1193.)  Further, as the ALJ points out, Plaintiff was able to function well enough to take care of her young grandchild.  (*Id.* at 38.)  Accordingly, the undersigned finds that the ALJ's evaluation of Ms. Guthrie's opinion is supported by substantial evidence.

C.    **Amynda Rhodes, Psy.D., Consulting Examiner**

Plaintiff also contends that the ALJ did not give sufficient weight to the opinion of Amynda Rhodes, Psy.D., a consulting examiner.  (Pl.'s Statement of Errors at 8–10, 14, ECF No. 11.)

Dr. Rhodes performed a consultative examination of Plaintiff on March 23, 2015, after which she diagnosed Plaintiff with Major Depressive Disorder, Unspecified Anxiety Disorder, Unspecified Personality Disorder, and moderate Substance Use Disorder (Cannabis).  (R. 753–760.)  Dr. Rhodes opined that Plaintiff "presented within average limits of intellectual functioning which suggests no cognitive impairment understanding or responding to supervisor feedback and adequately relating to co-workers," but that she also "presented as nervous and depressed during the evaluation which would affect level of engagement with co-workers and supervisors" and that she "did not display effective task persistence when answering questions,

15

sometimes stopping and stating that she was too tired and overwhelmed to continue."  (*Id.* at 759.)  Dr. Rhodes further opined that Plaintiff "described depressive symptoms that would compromise ability to respond to work pressures and would lead to increased emotional instability and withdrawal" and that she "presented limited cognitive ability to adapt to work pressures."  (*Id.* at 760.)

As a non-treating practitioner, Dr. Rhodes's opinion is not entitled to any particular deference.  Consultative examiners' opinions must be meaningfully evaluated according to the factors set forth in 20 CFR § 404.1527(c), but an ALJ need not give "an exhaustive factor-by-factor analysis."  *Kent v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 643, 650 (S.D. Ohio 2015) (quoting *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011)).  Because a consultative examiner usually meets with the claimant only once, they usually do not have an on-going treatment relationship with the claimant to trigger the deference owed to treating physicians.  *Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 245–46 (6th Cir. 2018) (the absence of an on-going treatment relationship means "the ALJ is entitled to give less weight to the consultative examiner's opinion") (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (2017)).

The ALJ provided the following discussion of Dr. Rhodes's opinions:

. . . [Dr. Rhodes] found that the claimant described mental health problems that would lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate coworker relationships.  She noted the claimant presented with emotional instability when discussing pressures.  She found the claimant's symptoms would compromise the ability to respond to work pressures and lead to an increased likelihood of agitation and conflicts with others.  She found the claimant had limited cognitive ability to adapt to work pressures, with a history of emotional deterioration in response to work pressure.  As noted by the medical expert, her opinion was largely based on the claimant's own self-reported limitations during this single examination.  It was not consistent with a review of the longitudinal record, which often showed an unremarkable mental status examination.  Thus, this opinion is given little weight.

16

(R. 37).

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Rhodes's opinion.  The ALJ explained he gave little weight to Dr. Rhodes's opinion because it was inconsistent with other evidence of record.  *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  The undersigned finds the ALJ's determination that Dr. Rhodes's opinion was largely inconsistent with the record is supported by substantial evidence.  For example, Dr. Rhodes opined that Plaintiff "did not display effective task persistence when answering questions," but the rest of the record often showed unremarkable mental status evaluations.  (*See* R. 37, 1078–87, 1109–1118, 1174–1193.)   Further, the ALJ properly gave Dr. Rhodes's opinion little weight because it relied heavily on Plaintiff's self-reported limitations. *Kepke v. Comm'r of Soc. Sec.,* 636 F. App'x 625, 629 (6th Cir. 2016) ("The ALJ also properly discounted Dr. Chapman's opinion because it relied heavily on [Plaintiff's] self-reporting.").

Finally, the ALJ did not disregard Dr. Rhodes's opinions entirely; instead, he included limitations in the RFC (such as limiting Plaintiff to only occasional contact with supervisors, coworkers, and the public) to account for Dr. Rhodes's findings that the ALJ found to be consistent with the record.  Accordingly, the undersigned finds that the ALJ's evaluation of Dr. Rhodes's opinion is supported by substantial evidence.

**D.**     **Dr. David Klein, M.D. and Dr. Chandravan Patel, M.D., Treating Physicians**

Plaintiff further contends that the ALJ should have given greater weight to the opinion of Dr. David Klein, M.D. and Dr. Chandravan Patel, M.D., her treating physicians.  (Pl's Statement of Errors at 11–12, ECF No. 11).

Dr. Klein saw Plaintiff sporadically from 2014–2019. (R. 51–57, 247–49, 690–710, 795–807, 817–20, 898–948, 1342, 1366–1373.) Dr. Klein is a specialist in internal medicine. (*Id.* at 51.) Although Plaintiff and Dr. Klein discussed Plaintiff's mental illness, she also saw him for other health issues including regular check-ups (*Id*. at 51–57), blood pressure (*Id.* at 247), and back pain. (*Id.* at 817.) On February 14, 2018, Dr. Klein wrote a letter, stating in its entirety: "To Whom It May Concern: Sonia is under medical care, and is, at this time, unable to engage in gainful employment." (*Id.* at 1342.)

Plaintiff saw Dr. Patel from 2013–2016. (R. 684–89, 808–16, 849–50.) She saw him for psychiatric treatment and he repeatedly noted her anxiety, depression, and panic attacks. (*Id.*) Dr. Patel prescribed her several medications including Topamax, Wellbutrin, and Xanax. (*Id.* at 689.) In June 2015, Dr. Patel completed a medical source statement for Plaintiff in which he listed "afraid to leave house, severe diarrhea, anxiety, and panic attacks" as significant restrictions of Plaintiff's daily activities. (*Id.* at 809.) In 2016, Plaintiff told Dr. Patel she was planning to apply for disability. (R. 30, 1049.) According to Plaintiff, Dr. Patel told her she could work, and he was "rude" to her. (*Id.*) Plaintiff did not return to see Dr. Patel after 2016. (*Id.* at 849–50 (last visit records dated January 15, 2016).)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

18

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . " 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially

bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ expressly consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d)(2); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ provided the following discussion of Dr. Klein's opinion:

> The undersigned has considered the opinion of Dr. David Klein and the undersigned gives his opinion little weight. In February 2018, he wrote a vague letter asserting that the claimant was under his medical care and at this time was "unable to engage in gainful employment." The ultimate issue of determining disability is a finding reserved for the Commissioner. This statement is an incredibly vague and conclusory statement providing no basis or explanation for his conclusion. Furthermore, he wrote this letter at the direction of the claimant. The claimant asked for a letter stating she could not work. The physician's assistant stated she would then get Dr. Klein to write such a letter and he then wrote it. Dr. Klein did not even see the claimant when he wrote the letter. He was not providing significant treatment for the claimant's mental health issues. There is nothing in his treatment records to support his vague assertion. Thus, this opinion is given little weight.

(R. 38.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Klein's opinion.  The ALJ articulated that he declined to give Dr. Klein's opinion controlling weight because Dr. Klein's opinion was not supported by his treatment records and because Dr. Klein did not provide significant treatment for Plaintiff's mental health conditions.  Further, the ultimate decision of disability is reserved for the Commissioner.  Moreover, the ALJ explained that he gave the opinion little weight using the *Wilson* factors: the nature and extent of the treating relationship (that Dr. Klein was not providing significant mental health treatment to Plaintiff and that he wrote the letter at Plaintiff's request) and supportability of the opinion (that there was nothing in his treatment records to support his letter).  The ALJ was not required to address all the *Wilson* factors, but merely to provide an explanation to Plaintiff.  Here, the ALJ met that requirement.  Accordingly, the undersigned finds the ALJ's evaluation of Dr. Klein's opinion is supported by substantial evidence.

As to Dr. Patel, the ALJ provided the following discussion of his opinion:

> The undersigned has considered the opinion of Dr. Chandravan Patel and the undersigned gives his opinion partial weight.  He completed mental status questionnaires listing various examination findings.  In June 2015, he noted she had an increase in symptoms over the past six to eight months and that she had ongoing stressors related to caring for her granddaughter and her daughter's legal and substance use issues.  He noted her tolerance to stress was poor. He had a long treatment history with the claimant and his statements are consistent with her treatment records.  However, his opinion here is fairly vague as he does not really provide functional limitations and mainly just lists examination findings.  Thus, these opinions are given little weight.

(R. 36.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Patel's opinion.  The ALJ articulated that he declined to give Dr. Patel's opinion controlling weight because it was vague.  *See Mardis v. Comm'r of Soc. Sec.*, No. 2:18-CV-337, 2019 WL 2223071,

at *3–4 (S.D. Ohio May 23, 2019) (finding the ALJ's decision to afford little weight to a treating

provider's vague opinion was supported by substantial evidence). Further, the ALJ explained

that he gave the opinion little weight using at least one of the *Wilson* factors: the supportability

of the opinion (the opinion was vague and did not provide functional limitations). Moreover, the

ALJ later notes in his opinion that Dr. Patel thought Plaintiff could work, which "strongly

contradicts her allegations of disability." (R. 38.) The ALJ goes on to note that Plaintiff stopped

seeing Dr. Patel after he encouraged her to continue working and then "shopped around" for a

new provider who would support her disability claims. (*Id.*) Accordingly, the undersigned finds

the ALJ's evaluation of Dr. Klein's and Dr. Patel's opinions are supported by substantial

evidence.

**E.      Dr. Judith Schwartzman, Psy.D., and Joseph Edwards, Ph.D., State Agency Reviewers**

Finally, Plaintiff argues that the ALJ should have given greater weight to the opinions of

the two state agency reviewing psychologists. (Pl.'s Statement of Errors at 9–10, 13–14, ECF

No. 11.) At the initial level, the state agency psychologist, Judith Schwartzman, Psy.D., opined

that Plaintiff "would do best in a work environment in which she works either alone or within a

small group of co-workers whom she knows well. Interactions with co-workers should be

infrequent, brief, and superficial. Supervisors need to provide constructive criticism and to also

give positive feedback about [claimant's] performance strengths." (R. 356.) She also opined

that Plaintiff would "need advance notice of major changes and a gradual implementation to

allow her time to adjust." (*Id.*) At the reconsideration level, Joseph Edwards Ph.D., concurred

with all of Dr. Schwartzman's opinions, and also opined that there was "no significant worsening

in evidence," and that Plaintiff had had "fluctuating response to treatment and ongoing anxiety

and depression with panic." (*Id.* at 386.)

Like other medical source opinions, the ALJ must consider state agency medical opinions. *See* 20 C.F.R. § 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); SSR 17-2p, 2017 WL 3928306 (March 27, 2017), at *4 (noting "[a]lthough adjudicators at the hearings and AC levels are not required to adopt prior administrative medical findings when issuing decisions, adjudicators must consider them and articulate how they considered them in the decision.").

The ALJ provided the following discussion of the state agency reviewers' opinions:

> The undersigned has considered the opinions of State agency psychological consultants Dr. Judith Schwartzman and Dr. Joseph Edwards and the undersigned gives their opinions little weight. They found the claimant had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. They found the claimant had moderate limitations understanding, remembering, or applying information. They found she could perform one to two step tasks, but three to four step tasks would require intermittent supervisions to assure performance accuracy. They found she was moderately limited maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, completing a normal workday and workweek without interruption from psychological based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. They found she could perform one to two step tasks and would need intermittent supervision on three to four step task [*sic*]. They found that when symptoms increased, the claimant [was] moderately limited in accepting instructions and criticism from supervisors. They found she would do best in a work environment where she either worked alone or within a small group of coworkers who she knew well. They found interactions with coworkers should be infrequent, brief, and superficial. They found supervisors needed to provide constructive criticism and give positive feedback about the claimant's performance strengths. They found the claimant [was] moderately limited in responding appropriately to changes in the work setting. They found she would need advance noting of major changes and a gradual implementation to allow her time to adjust. The longitudinal record as a whole does not support this degree of limitations. As

noted by the medical expert, the claimant frequently had mental examinations that were almost entirely within normal limits.  Thus, these opinions are given little weight.

(R. 35–36.)

The undersigned finds no error with the ALJ's consideration and weighing of the state agency reviewers' opinions.  First, the ALJ directly adopted several of the state agency reviewers' opined limitations—namely, that Plaintiff's job duties include only occasional contact with coworkers, supervisors, and the public, and that Plaintiff's work routine could only have occasional changes.  (R. 24, 368, 386.)  The ALJ explained he gave little weight to Dr. Schwartzman's and Dr. Edwards's remaining opinions because they were inconsistent with the record as a whole, specifically because Plaintiff frequently had mental examinations substantially within normal limits.  (*Id.* at 36.)

In sum, the undersigned finds that the ALJ's weighing of the mental health opinions is supported by substantial evidence and **RECOMMENDS** that Plaintiff's sole contention of error be **OVERRULED**.

## VI.    DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those

24

portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

25